## MOFFETT *et al. v.* BREWER *et al.*

In exercising the common law right of abating a nuisance, the party should go no further than is absolutely necessary; and should commit the least practicable injury in accomplishing the object.

To justify a person in thus taking the law into his own hands, it should appear that the nuisance was a particular injury to his person or property, and operating prejudicially at the time of its abatement. It should be authorized only in cases of particular emergency, requiring a more speedy remedy than can be had by ordinary proceedings at law; and, in case of private nuisance, the remedy should be resorted to within a reasonable time.

If a mill-dam is erected so high, as to flow the water back upon a dam above it, under circumstances which might justify the injured party in abating it, by his own acts, he must confine his operations to the dam itself, and to such portions of it only as caused, and by dejection would remove the injury.

The right to have a stream flow in its accustomed course is universally incident to the property in the adjoining lands; and the riparian proprietor, on one side of a stream, cannot be justified in diverting its course from others, even by excavation through his own land.

A person, under legislative sanction, has a right to erect a dam upon a stream in which he is interested, as a tenant in common; but cannot be justified in so erecting as to encroach upon the rights of others.

*Points decided by the opinion of Judge Hastings on the rehearing of this case :*

Skunk river not being a navigable stream, the bed and waters between the banks, owned by different individuals, are common to both.

Tenants in common have a right to erect dams across such a stream, but not in a manner, or so nigh, as to injure other tenants in common; but if so erected, it becomes a private and not a public nuisance, and therefore should be abated within a reasonable time.

ERROR, *to Henry District Court.*

*Hall* and *Mason,* for the plaintiffs in error.

*M. D. Browning* and *D. Rorer,* for the defendants.

*Opinion by* GREENE, J. An action on the case, for diverting the natural course of a stream, and the consequent injury to the dam and mill of Brewer and Day, the plaintiffs below.

Moffett *v.* Brewer.

It appears from the bill of exceptions that the plaintiffs built a dam on Skunk River, in 1841, and erected on its north bank a grist and saw-mill. The south end of the dam was connected with the main shore by a bar, or bank, through which the defendants dug a ditch close to the end of the dam, three or four feet deep, about the first of October, 1844; the water passing through this ditch wore a channel for itself, and thereby was drawn from said mills, and prevented them from running.

The defendants, Moffett and Kesler, adduced testimony, showing that they had a dam and mill on the same river, about a mile and a half above the dam of Brewer and Day; that they erected them in 1836; and that at certain stages the plaintiffs' dam caused the water to flow back upon their wheel, about one foot at the forebay. They also proved title to the land on the south side of the river, adjacent to plaintiffs' dam; and that the ditch they dug was on the main shore, at a common stage of water, and on their land.

Upon the trial, the court gave in substance the following instructions to the jury, to which exceptions were taken by the defendants:

1. In case the plaintiffs' dam was a nuisance to the defendants, they had a right to abate it, but no right to do anything more than abate the dam itself; and that if they went, even upon their own land, and dug around the end of the dam, so as to cause the channel of the river to flow there, to the detriment of the plaintiffs' possession, they were liable in this action.

2. In answer to an inquiry by a juror, that in case the dam should be regarded as a nuisance, whether the defendants were bound to abate it without delay, or not at all; the court ruled that the defendants could only abate the nuisance within a reasonable time, after which they would be limited to their remedy at law.

2. The defendants' counsel asked the court to instruct the jury, that if the digging done by defendants would not of itself have produced any injury to the plaintiffs, only in consequence

of their previous wrongful act, that then they would not be entitled to a verdict. The court gave the instruction accordingly, but stated further, that if even in that case the defendants dug the ditch, with the intention of diverting the stream from its wonted channel, and it was so diverted, they were liable.

We will briefly notice the correctness of these instructions, in their order. One of the remedies recognized by law, is the right of a party injured to enter and abate a nuisance. But the abatement should be limited to its necessities; and with the least practicable injury be confined to the object which creates the grievance. To justify a person in thus taking the law into his own hands, it should appear that the nuisance was a particular injury to his person or property, and operating prejudicially at the time of its abatement. *Gates* v. *Blancoe*, 2 Dana, 158.

This summary method of redressing a grievance, by the act of an injured party, should be regarded with great jealousy, and authorized only in cases of particular emergency, requiring a more speedy remedy than can be had by the ordinary proceedings at law. If the nuisance alleged in this case was sufficiently urgent to justify the defendants in redressing the wrong by their own power, without the more commendable resort to judicial authority, they should at least have confined their operations to the dam itself; and to such portions of it only as caused, and by dejection would have removed, the injurious effects alleged.

The concluding portion of the first instruction referred to we regard as equally correct. The fact that the defendants diverted the water from the plaintiffs' mill and dam, by digging the ditch upon, and conducting the water through their own land, can amount to no justification. We think the authorities referred to, and others which we have examined upon this point, are quite conclusive.

The plaintiffs owning the land on the north side of the river, with prior occupancy at that point in using the water for hydraulic purposes, and having legislative authority to construct their dam, they felt entitled to, and were deeply interested in

Moffett *v.* Brewer.

the uninterrupted continuance of the natural channel; and had an especial, though not exclusive, right to the use of the water flowing through it. If the principle which appears to be well recognized is correct, that a person has no right to conduct a stream from its natural course to the injury of others, though he has title to the land over which it passes, a diversion in a case like this would we think be unjustifiable, even if done for the purpose of abating a nuisance.

The right to have a stream flow on in its accustomed course is recognized to be universally incident to the property in the adjoining lands. It is a right which the riparian proprietors on one side of a stream can, under no pretext, be justified in drawing from those on the opposite side, though accomplished by excavating a channel through their own land. By virtue of their ownership, they are entitled to the use of the water flowing by, or over their land in *its* natural current, without diversion, material diminution, or obstruction; but no such proprietor has a right to divert or use the water to the prejudice of another.

Upon the principle involved in the second instruction of the court, directing that the party should be limited to a reasonable time within which he could properly abate a nuisance by his own mere act and authority, we have but little law before us. Bracton's view, that when the remedy by the act of the party is resorted to, it should be taken without delay, appears both reasonable and just in its application to a private nuisance. It is consistent with the reason of the law, which extends this extraordinary remedy to individual discretion. It being a self-constituting power, which should only be exerted in particular emergencies, when the security of life and property may require immediate action, a party should, if at all, avail himself of it at once. If he suffers time to elapse, within which he might have sought redress, or enjoined the injury before a judicial tribunal, the presumption reasonably arises that he has suffered no particular damage; that he tacitly acquiesced in its continuance, and that there was no very pressing necessity for this harsh and summary resort.

Moffett *v.* Brewer.

The reasons which induce our concurrence in the first in-struction are in part applicable to the third. The right of the plaintiffs to build their dam when they did, cannot, we think, be seriously questioned, and hence cannot be regarded as a wrongful act. It appears that the land of the defendants on the south side of the stream, extended only to the bank, and embraced no other fee than that of a tenant in common to the soil in the bed of the river. The dam then, we presume, could have been on no portion of their land, beyond the bed of the stream, and was confined within the meandered lines established by the government survey. Prior occupancy, and legislative sanction, gave the plaintiffs the use and benefit of their dam, so far as they could be realized without encroaching upon the rights of the defendants. If the water was flowed back upon their wheels or land, they unquestionably had their action at law. Although the erection of the dam by the plaintiffs may have been in itself lawful, yet, if in its conse-quences it necessarily damaged the property of the defend-ants, they could recover reparation commensurate to the inju-ry sustained. But if the injury amounted to a nuisance of such a serious nature as to justify an immediate abatement, they should still be confined within the rule for abating a pri-vate nuisance, and carry their operation no farther than was necessary to effect the object. And this clearly could not jus-tify them in digging the ditch and diverting the stream from its wonted channel, without incurring liability to the plaintiffs, even if they had committed a prior wrongful act in creating a nuisance. We consider the instructions given to the jury by the district judge as substantially correct.

Judgment affirmed.

A rehearing was granted in this case on the following appli-cation, submitted by *Judge Mason*, for the plaintiffs in error:

The counsel for the plaintiffs in error move the court for a rehearing in the above-entitled case, under the sincere convic-tion that the decision of the case made at the present term is erroneous in this:

Moffett *v.* Brewer.

1. The supreme court decided, that although the dam was a nuisance, Moffett had no right to abate it in any other way than by removing the dam itself.

We admit that such is the general rule, but insist that it is not applicable to the present case. The rule would only prohibit us from injuring any other property of the defendant in error, but does not require us not to dig around the dam on our own land; especially when this is done in self-defense, against a wrongful act of his. Thus, it is a general rule that I shall not strike my neighbor. But suppose he assaults me; there is then an exception to the rule: and the law in such a case requires me not to proceed beyond the bounds of reason in punishing the aggressor, in the same manner as it requires me, in the abatement of a nuisance, not to cause any unnecessary destruction.

But I may evade the effect of the wrongful act of my adversary. I may dodge his blow, instead of returning it. I may dig around on my own land, instead of destroying his dam. If a man hurls a missile at me, I may jump out of the way, although the effect may be that the missile will thereby kill one of his own children. The original wrong-doer, in those cases, is responsible for the consequences. At all events, he has no ground of complaint.

In the case of a person assaulting me, I am not watched very closely by the law, but am given a considerable latitude. I must go clearly beyond the bounds of reason before I make myself liable. The rule is the same in the abatement of nuisances. See 3 Black. Com. p. 5, *n.* 6.

Why should the law be over jealous in guarding this private remedy, and keeping it within strict limits? The party has only done what the law would have done for him, after the public and the courts had been seriously taxed in time and money. Where the act has been done quietly, and where it is restricted within reasonable limits, I see no reason why it should be viewed with judicial disfavor. It is as much under the supervision of the courts as though he had filed his bill in the first instance for the abatement of the nuisance. The only

difference is, that in the one case he files his bill, and the court thereupon directs the abatement of the nuisance : in the other, he abates the nuisance, and the courts supervise the act, and only sanction it in case he has gone no further than they would have directed.

2. But whatever may be thought of the soundness of the views above expressed, we think the position is sound, that the party aggrieved by a nuisance has the right to abate it for twenty years, if it be merely a private nuisance, and for a longer period if a public nuisance ; and that the court erred in deciding that the right to abate must be exerted without delay, or not at all. The only authorities giving the least countenance to such a conclusion, are the allusions in the law of easements to a saying of Bracton, and the reason given by Blackstone for permitting the remedy at all.

In the case of the abatement of a nuisance, Bracton says, "it must be done without delay." If that proposition is law, is it not strange that it is not indorsed by the author who quotes it? But instead of doing so, he all along treats the right as coextensive with that of obtaining a remedy at law. And so with all the other authors. See Angell on Water Courses, 136, and *Hodges* v. *Raymond*, 9 Mass. 316. The supreme court of New York regard the abatement of a nuisance as merely a preventive remedy, and classed with the right of entry upon lands, or of recaption of personal property, where the necessity of immediate action does not exist. See *Pierce* v. *Dart*, 7 Cowen, 612.

Blackstone, it is true, gives as the reason why this remedy is permitted, that evils of this kind require an immediate remedy, and cannot wait for the slow process of the law. This may be one of the reasons, but still it does not limit my right of redress : and that same author, without qualification, treats the subject as though the unlimited option were left with me to select which of the two remedies I please. 3 Black. Com. 220. The nuisance may have existed for years without my ever having experienced any special inconvenience from it. When it becomes annoying, is my previous forbearance to limit my rights?

Moffett *v.* Brewer.

Brewer's dam might have produced no inconvenience, except at intervals. Every fresh inconvenience would then be a new grievance, for which he might assert his natural remedy, notwithstanding his previous forbearance. Suppose A has been in the habit of assaulting B for three years whenever he met him, will this put it out of B's power legally to defend himself whenever his courage or his strength will permit? The continuance of a wrong becomes daily a new wrong. Brewer's dam was daily a fresh nuisance, which Moffett might abate whenever he was awake to his rights, or aroused to a determination to assert them.

As direct authority upon this point, we refer to the case of *Colburn* v. *Richards*, 13 Mass. 420. There the nuisance (which was the building of a dam) had existed for seven years, and had been a nuisance every winter during that period ; still the court sustained the right of the party aggrieved to enter and abate the nuisance after the lapse of that length of time.

But the most positive case on this point is that of *Renwick* v. *Morris*, 3 Hill, 621. In that case the court decide that a public nuisance may be abated after the lapse of twenty years. They go on further to say, that they are aware of no case denying that the remedy by abatement is, in all respects, concurrent with that by indictment. That, it is true, was the case of a public nuisance ; but wherein is the difference, so far as it concerns the question we are now considering? Cannot a person, aggrieved by a public nuisance, appeal to the law for redress as readily as for a private nuisance? Why should not his right to a private remedy expire after he has had a reasonable time to invoke a legal remedy, as well in the case of a public as of a private nuisance? The difference between the two kinds of nuisance, so far as remedies are concerned, is that the one permits of abatement or indictment, the other of abatement or action. In a private nuisance the remedies expire after twenty years, in a public nuisance there is no such limitation ; but abatement in each is one of two concurrent remedies—concurrent in all respects.

If, when a person obstructs the public road, no length of

time takes away my right of private interference by abatement, can there be any good reason why I should be deprived of a like right when the obstruction is to my private lane, up to the time that prescription has ripened his wrong into a prescriptive right?

3. The remaining error assigned by us is set forth in the concluding portion of the bill of exceptions. The court charged the jury that the plaintiffs below would not be entitled to a verdict, provided the act of Moffett would have produced no injury but for the previous wrongful act of Brewer; but stated further, that " even in that case, if the defendant, Moffet, dig the ditch with the intention that it should have the effect of diverting the stream from its wonted channel, and the stream was so diverted, he was liable." The point here raised is this, that if a person does an act which is innocent in itself, can you inquire into his intention? A man may do an act with the most diabolical of motives; still, until that motive has ripened into the commission of some act forbidden by law, he is not answerable either civilly or criminally. Do you, in civil actions, ever inquire into intent in determining whether the defendant is liable? We sometimes make that inquiry in order to determine whether to give exemplary damages, but never I believe for the purpose of fixing liability.

On this last point the argument below was so brief and imperfect, that the supreme court seem to have misapprehended it. At all events, the point does not seem to have been decided, as will appear from a reference to the opinion filed in the case. We should be glad to have that point settled.

The following opinion was delivered on the rehearing of this case by

HASTINGS, C. J. This case having been again argued on rehearing, and many additional authorities submitted, it is due to the importance of the case, and the zeal and ability with which the plaintiffs' counsel have investigated the rights of the plaintiffs in error, that another response should be made, asserting what we still think to be the law of the case. And

Moffett *v.* Brewer.

the first and most important question to be settled is whether the Skunk river is a navigable stream, and as such a common highway under the usual definition of navigable streams in the western states; for upon the solution of this question depends the character of a nuisance caused by erecting a dam across the same.

This river was declared navigable by an act of the general assembly of 1847, which cannot however change the rights of the parties at the time of the commencement of this suit. The river is reported to be a shallow fresh-water stream, having its source within the boundary limits of this state, and discharging its waters into the Mississippi; and has none of the usual natural characteristics pertaining to streams denominated navigable or common highways, nor does it appear to have been used for such a period of time in boating or navigation of any kind as to render it such.

If it were a navigable river, or had been declared to be such by statute, it would fall under that class of streams which are declared navigable and free by the ordinance of 1787, which provides that "the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places, should be common highways, and forever free."

The same is declared in the act of the 3d of March, 1811, as to the navigable waters in the territory of Orleans and Louisiana.

The Mississippi and Missouri rivers, and navigable waters running into them, and the carrying places between them, are made common highways by the act of the 4th of June, 1812, providing for the government of the territory of Missouri. By the acts of May 18, 1817, 3d of March, 1803, and 26th of March, 1804, it is provided "that navigable rivers and streams shall be and remain public highways. Streams not navigable, having the opposite banks owned by different persons, shall have their beds and waters common to both."

The bed and waters then of this river were common to both parties in this case, "the opposite banks" being owned by them. If there had been no acts of congress defining

their rights, the position of the plaintiff in error would be correct, that each proprietor would own the river and its bed to the thread of the stream, and Moffett then would have the right to abate any dam erected on his soil. By the acts of congress referred to, he and Brewer are tenants in common of this river and its bed, each one having a right to erect dams across the same, but not however to the detriment of the other's rights. Brewer had a right by reason of his common interest to erect his dam, but not so high as to injure Moffett's mill above; and it was Moffett's right to prostrate so much of Brewer's dam, as to leave him in the enjoyment of his prior rights, and no more. Angell on Water Courses, 138.

Such being the rights of the parties, and there being no evidence before the court, nor any statute submitted showing that this was a public highway when the dam was erected, and when this action was brought, the nuisance, if any, of Brewer, was a private nuisance, and the court below did not err in instructing the jury that Moffett should abate the same in a reasonable time, or be left to the usual legal remedies.

This instruction cannot be error, if it be admitted that Moffett could not exercise his right of abatement at an unreasonable time, and when the reason for resorting to this remedy had failed. It is because of the delay of legal proceedings that this remedy is given. In the case of *Hodges* v. *Raymond*, 9 Mass. 318, 319, the court say: The remedy for this nuisance would have exposed Raymond to most inconvenient delay, as his operations were of great importance to him. The reason given by Blackstone for this summary remedy, the dictum of Bracton, and indeed the very necessity of such a remedy, convince us that the court did not err in this instruction. The case cited from 13 Mass. 420, presents a case of the exercise of this right, years after the cause of the nuisance had been erected; but the injury seems to have been only periodical, and never to have prevented the use of the mill, until the 25th of November, 1815; nor does it appear that the question here presented was decided in that case. "In the case before us," said Ch. J. Parker, "the whole

Moffett *v.* Brewer.

stream was stopped, or at least so much of it as to render the defendant's mill entirely useless." This does not appear to have occurred before.

The plaintiffs' counsel seems to rely with more confidence on the error assigned to the last instruction of the court, where the court says, " that if, however, even in that case, the defendant Moffett dug the ditch with the intention that it should have the effect of diverting the stream from its wonted channel, and the stream was so diverted, he was liable."

It is argued that Moffett should not be liable in a civil action for an intention to do an injury ; but it appears the court followed the intention with the consequent injury, by adding " and the stream was so diverted."

The counsel do not contend that Moffett would not be liable for digging a ditch on his own land, and thus changing the channel of the river. To contend for such a doctrine would argue that any riparian owner on a stream would have a right to appropriate the same to his own use, and convert a small river into a canal, and entirely annihilate the natural course and bed of the stream ; but they contend that although the digging of the ditch was a wrongful act, yet it was caused by Brewer's own acts, and the case of personal self-defense is urged as a parallel. Although a person can ward off the blows of an assailant, it is at the same time admitted that he will be liable for an excessive battery in self-defense ; so, although Moffett had a right to defend his mill from the injury caused by Brewer's dam below, by prostrating so much of the same as caused the injury, he had no right to divert the river from its natural channel. This was excessive, for which he was liable.

Judgment affirmed.